UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
VIRGINIA GLANZ
Debtor

Chapter 13
CASE NO: 16-20266

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
VIRGINIA GLANZ
Debtors

MOLLY T. WHITON
Trustee

May 9, 2016

MOTION FOR RELIEF FROM STAY

    Connecticut Housing Finance Authority (Movant) hereby moves this Court for an order as follows:

    1.  The above-captioned debtors filed a Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code on February 24, 2016.

    2.  This Court has jurisdiction over this matter pursuant to 11 U.S.C. 362(d), 28 U. S. C. Section 1334 and 28 U.S.C. Section 157(b)(2)(G).

    3.  Pursuant to 11 U.S.C. Section 362, all parties are enjoined and stayed from commencing or continuing suit against the debtors.

    4.  The debtor is the owner of real property known as 29 Pardee Street, Bristol, CT and occupies the same.

    5.  The Movant is a secured party by virtue of promissory note in the original principal balance of $198,400.00, secured by a mortgage to McCue Mortgage Company dated April 20, 2006 and recorded April 21, 2006 in Volume 1678 at Page 461 of the Bristol Connecticut Land Records, which mortgage was subsequently assigned to Connecticut

Housing Finance Authority by assignment dated April 20, 2006, and recorded April 21, 2006, in Volume 1678 at Page 472 of the Bristol Connecticut Land Records.

6. The property has a appraised value of $130,000.00 and the debt due movant has a secured claim of $221,471.41 plus interest, escrow advances and other lawful charges and constituting a first mortgage on debtors' primary residence is a fully secured claim.

7. The debtor's are due for the March 2016 post-petition payment to date.

8. The debtors are not adequately protecting the movant's fully secured interest in the subject property.

WHEREFORE, the movant represents that good cause exists for the granting of its motion for relief from stay for purpose of exercising its legal rights pursuant to its first mortgage on the subject real property

    MOVANT,

By   /s/Kevin J. Burns
Kevin J. Burns, Esq.
COHEN, BURNS, HARD & PAUL
Its Attorneys
81 South Main Street
West Hartford, CT 06107
Tel 860 561 1036 Fax 860 247 2126
kburns@cbhplaw.com
Juris No. CT 03075

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
VIRGINIA GLANZ
Debtor

Chapter 13
CASE NO: 16-20266

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
VIRGINIA GLANZ
Debtors

MOLLY T. WHITON
Trustee

May 9, 2016

ORDER GRANTING RELIEF FROM STAY

After notice and a hearing, *see* Bankruptcy Code Section 102(1), on _____ (hereafter the "Movant") Motion for Relief from Stay (hereafter, the "Motion"), Doc. I.D. No.: 21

**IT IS HEREBY ORDERED** that the Motion is Granted- the automatic stay of 11 U.S.C. Section 362(a) is modified pursuant to 11 USC Section 362(d)(2) to permit the Movant, and/or its successors and assigns, to exercise it rights, if any, with respect to real property known as 29 Pardee Street, Bristol, CT in accordance with applicable non-bankruptcy law.

Dated at                         Connecticut, this      day of
2016.
                                 BY THE COURT

                                 _____
                                 U. S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>VIRGINIA GLANZ<br>Debtor | Chapter 13<br>CASE NO: 16-20266 |
| CONNECTICUT HOUSING FINANCE AUTHORITY<br>    Movant<br>V.<br>VIRGINIA GLANZ<br>Debtors | |
| MOLLY T. WHITON<br>Trustee | May 9, 2016 |

NOTICE OF CONTESTED MATTER

Connecticut Housing Finance Authority (Movant) hereby notifies all parties that it has filed a Contested Matter as defined under Federal Rule of Bankruptcy Procedure 9014.  The motion was filed, ECF___ on this date, May 9, 2016.  There is a Response Deadline relative to said motion of fourteen (14) days which expires, May 24, 2016.  In the absence of a timely response, the proposed order may enter without further notice or hearing.

MOVANT,

By   /s/Kevin J. Burns
Kevin J. Burns, Esq.
COHEN, BURNS, HARD & PAUL
Its Attorneys
81 South Main Street
West Hartford, CT 06107
Tel 860 561 1036 Fax 860 247 2126
kburns@cbhplaw.com
Juris No. CT 03075

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
VIRGINIA GLANZ
Debtor

Chapter 13
CASE NO: 16-20266

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
VIRGINIA GLANZ
Debtors

MOLLY T. WHITON
Trustee

May 9, 2016

**C E R T I F I C A T I O N**

The undersigned hereby certifies that on May 9, 2016 the following parties were served electronically with CHFA's Motion for relief from automatic stay ECF#_____

Suzann L. Beckett on behalf of Debtor Virginia C. Glanz
SuzannB@Beckett-Law.com, Carlao@Beckett-Law.com

Kevin J. Burns on behalf of Creditor Connecticut Housing Finance Authority
kburns@cbhplaw.com

U. S. Trustee
USTPRegion02.NH.ECF@USDOJ.GOV

Molly T. Whiton
mtwhiton@mtwhiton.com

and mailed on May 9, 2016 , postage prepaid, to:

Virginia Glanz
29 Pardee Street
Bristol, CT 06010

                MOVANT, CHFA
                /s/Kevin J. Burns_____
                COHEN, BURNS, HARD & PAUL
                81 South Main Street
                West Hartford, CT 06107
                (860) 561-1036
                Juris #CT 03075
                kburns@cbhplaw.com

Glanz

# NOTE

FHA CASE NO.
061-2939463-703

April 20, 2006
[Date]

29 PARDEE STREET
BRISTOL, CT 06010

[Property Address]

1. **PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **THE McCUE MORTGAGE COMPANY**

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Ninety Eight Thousand Four Hundred and no/100** Dollars (U.S. $ **198,400.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Five and One Eighth** percent ( **5.1250**%) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**

   (A) Time

   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **June 01, 2006**. Any principal and interest remaining on the first day of **May 2036**, will be due on that date, which is called the "Maturity Date."

   (B) Place

   Payment shall be made at **ONE LIBERTY SQUARE, NEW BRITAIN, CT 06050**

   or at such other place as Lender may designate in writing by notice to Borrower.

   (C) Amount

   Each monthly payment of principal and interest will be in the amount of U.S. $**1,080.26**.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  **Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge       ☐ Graduated Payment Allonge

☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

   (A)  **Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4.0000**%) of the overdue amount of each payment.

   (B)  **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   (C)  **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE

ITEM 6432L2 (9606)           (Page 2 of 3 pages)           GreatDocs™
MFCD3001                                                   To Order Call: 1-800-968-5775
                                                           00111619

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)  _____ (Seal)
VIRGINIA C. GLANZ          -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                           -Borrower                              -Borrower

PAY TO THE ORDER OF
Connecticut Housing Finance Authority
WITHOUT RECOURSE
THE McCUE MORTGAGE COMPANY

BY: _____
DIANA M. DIBENEDETTO, Vice President

DATE  4/20/06

[Sign Original Only]

MULTISTATE FHA FIXED RATE NOTE

ITEM 6432L3 (9606)                  (Page 3 of 3 pages)                GreatDocs™
MFCD3001                                                    To Order Call: 1-800-968-5775
                                                                    00111619

4550

After Recording Return To:
McCue Mortgage Co
One Liberty Square
Post Office Box 1000
New Britain, CT 06050

Doc ID: 000747910011 Type: LAN
BK 1678 PG 461-471

SEE Assignment
VOL 1678 PAGE 472

———————————————— [Space Above This Line For Recording Data] ————————————————

## OPEN-END MORTGAGE

| FHA CASE NO. |
|---|
| 061-2939463-703 |

THIS MORTGAGE ("Security Instrument") is given on **April 20, 2006**
The mortgagor is **VIRGINIA C. GLANZ**

("Borrower"). This Security Instrument is given to
**THE McCUE MORTGAGE COMPANY**
which is organized and existing under the laws of **CONNECTICUT**, and whose address is
**ONE LIBERTY SQUARE, NEW BRITAIN, Connecticut 06050**

("Lender"). Borrower owes Lender the principal sum of
One Hundred Ninety Eight Thousand Four Hundred and no/100
Dollars (U.S. $ **198,400.00**   ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **May 01, 2036**   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns the following described property located in **HARTFORD**   County, Connecticut:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF

which has the address of **29 PARDEE STREET**,  **BRISTOL**
                                                    [Street]                              [City]
**Connecticut**        **06010**       ("Property Address");
                          [Zip Code]

CONNECTICUT FHA MORTGAGE                                                                      6/96
ITEM 6586L1 (0205)                                                              GREATLAND ■
MFCT3212                         (Page 1 of 7 pages)    To Order Call: 1-800-530-9393 □ Fax 616-791-1131
                                                                                      00111619

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

CONNECTICUT FHA MORTGAGE

ITEM 6586L2 (0205)    *(Page 2 of 7 pages)*    GREATLAND ®
MFCT3212    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131
00111619

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.
9. Grounds for Acceleration of Debt.
   (a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
       (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
       (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
       (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
       (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
   (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
   (e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **90 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

CONNECTICUT FHA MORTGAGE

ITEM 6586L4 (0205)  (Page 4 of 7 pages)  GREATLAND ■
MFCT3212  To Order Call: 1-800-530-9393 □ Fax: 616-791-1131
00111619

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender without further demand may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

CONNECTICUT FHA MORTGAGE

ITEM 6585L5 (0205)  
MFCT3212

(Page 5 of 7 pages)

GREATLAND ■  
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131  
00111619

19. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

21. **Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [ ] Condominium Rider | [ ] Graduated Payment Rider | [ ] Growing Equity Rider |
| [ ] Planned Unit Development Rider | [ ] Adjustable Rate Rider | [ ] Rehabilitation Loan Rider |
| [ ] Non-Owner Occupancy Rider | [X] Other [Specify] **Uniform & Tax Exempt Ride** | |

CONNECTICUT FHA MORTGAGE

ITEM 6586L6 (0205)         *(Page 6 of 7 pages)*         GREATLAND ®
MFCT3212                                                 To Order Call: 1-800-530-9393 □ Fax 616-791-1131
                                                         00111619

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*[signature]* (Seal)
VIRGINIA C. GLANZ    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Signed, sealed and delivered in the presence of:

*[signature]*
Robert J. Reicher

*[signature]*
Craig Taylor

State of Connecticut
County of Hartford    ss.    New Britain

The foregoing instrument was acknowledged before me this 20th day of April, 2006 (date) by

Virginia C. Glanz

(person[s] acknowledging).

*[signature]*
Robert J. Reicher    Notary Public
Commissioner of the Superior Court.
My commission expires:

CONNECTICUT FHA MORTGAGE

ITEM 6586L7 (0205)    (Page 7 of 7 pages)    GREATLAND ■
MFCT3212    To Order Call: 1-800-530-9393 □ Fax 616-791-1131
    00111619

TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this 20th day of April 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to THE McCUE MORTGAGE COMPANY ("Lender") of the same date and covering the property described in the Security Instrument to which this Rider is attached.

In addition to the covenants and agreements made in the Security Instrument, Borrower further covenants and agrees as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a) All or part of the Property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower to a purchaser or other transferee:

   i) Who cannot reasonably be expected to occupy the Property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i) (2) of the Internal Revenue Code; or

   ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d) (1)); or

   iii) At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

   iv) Who has a gross family income in excess of applicable median family income as provided in Section 143(f) and (i)(2) of the Internal Revenue Code.

(b) Borrower fails to occupy the Property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c) Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the Internal Revenue Code of 1986, as amended, in effect on the date of execution of the Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

_____    _____
BORROWER - VIRGINIA C. GLANZ        BORROWER


_____    _____
BORROWER                            BORROWER

CHFA form 053-1199
Page 1 of 1

8003

00111619
rev Jun-03

NOTICE TO BORROWERS:

THIS RIDER ADDS SUBSTANTIALLY TO THE TERMS OF THE MORTGAGE. DO NOT SIGN IT UNTIL YOU HAVE READ AND UNDERSTOOD IT.

## CHFA UNIFORM MORTGAGE RIDER
## OWNER-OCCUPANCY CERTIFICATE

This Uniform Mortgage Rider is made this 20th day of April 2006 and is incorporated into and amends and supplements a Mortgage dated of even date herewith, given by the
VIRGINIA C. GLANZ
("Borrower") to secure Borrower's Note to
THE McCUE MORTGAGE COMPANY
(the "Lender"), and covering the Property described in the Mortgage to which this Rider is attached. The Borrower acknowledges that the Mortgage and Note shall be assigned to the Connecticut Housing Finance Authority (the "Authority") or its designee.

1. The Borrower acknowledges and agrees that the Mortgage is being made in conformity with the requirements, without limitation, of Chapter 134 of the General Statutes of Connecticut, as amended, and the procedures and regulations promulgated thereunder which shall include the Home Mortgage Programs Operating Manual of the Authority (the "Manual"), and the Internal Revenue Code of 1986 (the "Code") and the rules and regulations promulgated thereunder (all of the foregoing being the "Requirements"). In the event that the Borrower has misrepresented or omitted a material fact in the loan application of the Borrower, or other documents submitted in support thereof, or does not comply with the requirements of the loan commitment to the Borrower, the Mortgage, or the Note, which it secures, the Authority may not be in compliance with the foregoing Requirements. Such noncompliance may adversely affect the tax-exempt status of the bonds issued by the Authority (the "Bonds"), and the ability of the Authority to issue tax-exempt bonds necessary to raise money to continue its Home Mortgage Purchase Program, under which the Mortgage is being made.

2. Borrower acknowledges and agrees that the Property shall be the permanent principal residence of the Borrower throughout the term of the Mortgage. Borrower further acknowledges and agrees that any violation of this paragraph by the Borrower will allow the Authority (or its designee), at its option, to increase the interest rate of the Mortgage to the maximum prevailing interest rate.

3. In recognition of the foregoing, and as a condition to the making of the Mortgage, the Borrower covenants and agrees that the Lender, or the Authority (or its designee) as the assignee of the Lender, may declare all sums secured by the Mortgage to be immediately due and payable upon the occurrence of any of the following:

    a. All or any part of the Property or an interest therein is sold or transferred by Borrower without the Authority's (or its designee's) prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to the Mortgage, (b) the creation of a purchase-money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (d) transfer made pursuant to court order in an action for dissolution of marriage or partition of real property.

    b. The Borrower does not occupy the Property as the Borrower's principal residence within sixty (60) days after the date hereof and continue to occupy the Property as such principal residence throughout the term of the Mortgage, or in the event this Mortgage is being used to finance a Qualified Rehabilitation (as such term is defined in the Manual), the construction of which is not required to be completed as of the date hereof, within sixty (60) days after the date construction has been completed.

    c. The Borrower fails to supply any information or document to the Lender or the Authority (or its designee) within ten (10) days after written request therefore provided such information or document has been requested in order to verify whether or not the Mortgage complies with the Requirements and such other conditions of the Authority's Home Mortgage Purchase Program under which this Property is being financed.

4. The Borrower acknowledges that the Lender and the Authority have relied upon the information, statements and representations contained in the loan application, the Borrower Certificate and other documents submitted in support of the loan application, in the processing, financing and granting of the Mortgage and in determining that the Requirements will be met. The Borrower represents that the information, statements and representations contained within the loan application, the Borrower Certificate and said other documents are true and complete as of the date hereof and that there have been no material adverse changes therein. The loan application, the Borrower Certificate and all other documents submitted in support of the loan application are incorporated herein and made a part hereof. Any misstatement or omission of a material fact in such documents with constitute a default under the Mortgage, and the Note which it secures, and may result in the Lender or the Authority (or its designee) declaring all sums secured by the Mortgage to be immediately due and payable. The Borrower agrees to hold the Lender and Authority (or its designee) harmless from any loss, cost or damages, actions or claims arising out of or related to a misstatement or omission of a material fact in the above described documents.

8004

00111619
rev Jun-03

5. Under the provisions of the Code, the Authority must pay or credit to borrowers earnings on certain non-mortgage investments in an amount, if any, determined under the Code. The amount and timing of the payment or credit will be made by the Authority at its sole discretion only as required by the Code to keep interest on the Bonds issued by the Authority exempt from Federal income taxes. The Authority is under no obligation to maximize or earn any amount which must be paid or credited to borrowers. The Authority assumes no responsibility as to the treatment of this payment or credit for Federal income tax purposes and the Borrower accepts full responsibility for same. In the event this Mortgage is not financed with pre-989 tax-exempt bond proceeds subject to the Code, the provisions of this paragraph shall not apply.

6. In the event of any conflict between the provisions hereof and the provisions of the Mortgage, or the Note which it secures, the provisions of this Uniform Mortgage Rider shall control.

7. The term Borrower used herein shall include any reference to Mortgagor, Grantor, Debtor, or any party so described and defined in the mortgage loan documents. The term Lender used herein shall include any reference to Mortgagee, Grantee, Creditor, or any party so described in the mortgage loan documents.

_____
BORROWER - VIRGINIA C. GLANZ

_____
BORROWER

_____
BORROWER

Received for Record at Bristol, CT
On 04/21/2006 At 11:23:56 am

_____ Town Clerk
Therese Pac

8004

00111619
rev Mar-03

Doc ID: 000747920001  Type: LAN
BK **1678** PG **472**

00111619
**4551**

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that The McCue Mortgage Company located in the City of New Britain and State of Connecticut, hereby assigns to Connecticut Housing Finance Authority a CT Corporation located at 999 West Street Rocky Hill, CT 06067-4005, a certain mortgage from VIRGINIA C. GLANZ to The McCue Mortgage Company in the principal sum of One Hundred Ninety Eight Thousand Four Hundred and no/100 dollars ($ 198,400.00 ) dated April 20, 2006 and recorded in the BRISTOL Land records in Volume 1678, at Page 461.

IN WITNESS WHEREOF, said corporation has affixed its seal this 20th day of April 2006.

Signed, sealed and delivered
in the presence of:

_Brenda Scully_ (signature)
Brenda Scully

_Lalena M. Pooler_ (signature)
Lalena M. Pooler

The McCue Mortgage Company

_Donna M. DiBenedetto_ (signature)
Donna M. DiBenedetto
Vice President

STATE OF CONNECTICUT:
                       : SS: New Britain
COUNTY OF HARTFORD:

April 20, 2006

Personally appeared, Donna M. DiBenedetto, Vice President of The McCue Mortgage Company, Signer and Sealer of the foregoing Instrument, and acknowledged the same to be her free act and deed and the free act and deed of The McCue Mortgage Company, before me.

_Lalena M. Pooler_ (signature)
Lalena M. Pooler
Notary Public
My commission expires on 5/31/09

Property Address:    29 PARDEE STREET
                     BRISTOL, CT 06010

Return to:
The McCue Mortgage Company
One Liberty Square
P.O. Box 1000
New Britain, CT 06050

Received for Record at Bristol, CT
On 04/21/2006 At 11:25:06 am

_Theresa Pac_ Town Clerk

00111619

8031

rev Aug 2002